## SUPREME COURT.

MARY SWORDS, administratrix, &c., respondent, *agt.* WILLIAM EDGAR, *et. al.*, appellants.

In an action against the *owners of a pier* for personal injuries, resulting in death, it might be conceded that if the pier was in an unsafe condition at the time it was leased to lessees, some fourteen months prior to the accident, the lessees then being in possession, would not afford a defense against a claim upon the owners for such injuries, arising from such defect, and where there was no direct evidence as to the condition of the timbers at the time of giving of the lease, but it was assumed by the judge at the trial that it might be inferred from general knowledge of the length of time required for wood to become rotten, but in this case it could not occur in the time intervening between the making of the lease and the happening of the accident; and the only evidence upon the subject was that it would require the lapse of fifteen years before such timbers would become so rotten :

*Held*, that it was impossible that the conclusion reached by the jury, in finding for plaintiff, could be sustained by such evidence, and that the court erred in submitting the inquiry which he did to the jury.

The judge also erred in submitting to the jury the question whether the defendants were in *possession* of the pier when the accident occurred. The only evidence to support the submission of this inquiry was that the lease was executed some months after it was dated, and that the defendants' agent entered upon the pier and made repairs upon it a few months after it broke down. It was also in evidence, and undisputed, that the lessees were in the possession at the date of the lease, and from thence until it fell.

*New York General Term, October,* 1872.

THE plaintiff sued under the act of 1847, to recover $5,000 for the death of her husband, who was a longshoreman, engaged on July 9, 1866, in discharging iron from a vessel unloading at Pier No. 11, North River. The iron overloaded the pier ; it fell, Swords with it ; he caught cold ; it resulted in congestion of the lungs, and on July 18, 1866, he died. The appellants owned the south half of the pier.

Other defendants were sued, as to whom the complaint was dismissed.

The jury found a verdict for $3,500 against the appellants. They made a motion for a new trial, which was denied, and from the order upon that motion, and from the judgment, the appeal is taken.

On October 19, 1865, the appellants leased their half of the pier to the Commercial Steamboat Company for five years, from May 1, 1865 (the lessees were in possession from that date, under the preliminary arrangement), by a lease which provided that the pier should be " kept in order and repair, by and at the cost of the lessees."

During the whole term the pier was occupied under the lease; the appellants were at no time in possession. The rent was regularly paid, sometimes by the lessees, sometimes by others, under or for them, but always under the lease.

It was conclusively proved that the pier fell through the fault of the owners of the steamer "Mauritius," in making a storehouse for iron of the pier, the plaintiff's intestate being employed in discharging that vessel. About eighty-five or ninety car-wheels, weighing five hundred pounds each, and three tons of iron, raised after the accident by the witness, Henry F. Backus, thirty tons of iron that was not raised, and fifty more car-wheels, and thirty tons more of iron, raised by the Coast Wrecking Company, or about ninety-eight tons of iron were placed on the bridge part of the pier, and crushed it in, falling with it into the water.

The pier was not a new pier. The only witness for plaintiff to its condition was another longshoreman, who testified that the dock gave a crack, the timbers broke off, and that he subsequently examined the timbers, and found them rotten as dirt. He would not, on cross-examination, say he saw two beams that were rotten; said that there were so many timbers underneath the dock that you could not tell whether they were placed on piles or not, and that from fifty to sixty feet in length broke. The other witness for plaintiff on the subject swore that only five to six feet in length fell; no other witness testified to any want of sound-

ness of the pier; and against this testimony was the evidence of the dock builder who repaired the pier, the stevedore who for twelve years had done business on the pier, another stevedore who, at the time of the accident, was engineer on the pier, and the wrecking company's agent, who raised part of the iron, all of whom proved the overloading, and proved that though there was a little necessary surface-rot from fresh water, where the plank rested on the cross-pieces, the beams were perfectly sound, and one of whom testified that in the morning of the day the pier fell, he notified the foreman under whom the plaintiff's intestate was working, that he was getting too much iron on the dock.

As the appellants had no legal right during their lease to enter in order to make repairs, and as they had required their lessees to covenant to keep the pier in repair, it will be seen how great is the hardship that on such evidence of the condition of the pier the jury should have gratified their sympathy for the plaintiff at the appellants' expense.

The appellants moved for a nonsuit, and presented certain requests to be charged by the judge, and the exceptions to the rulings in these respects, and to certain principles charged to the jury, raise the other questions presented by the appeal.

The case was submitted to the jury upon substantially these propositions, of which the appellants complain, and which, it is urged, amounted to little less than a direction of a verdict.

1. That the appellants were responsible if the pier were out of repair on May 1, 1865, from which date the lease took effect.

2. That though there was no evidence of the condition of the pier at any other date than that on which it fell, " we all know, from our common experience, that wood does not materially decay between May 1, 1865, and July 11, 1866."

3. That it was not contended that the condition of the pier on July 11, 1866, was materially different from what it

was on May 1, 1865, though there is nothing in the case to warrant the assertion, and on the contrary, appellants requested the court to .charge that there was no evidence of. want of repair at the execution of the lease.

4. That not only was the fact of the lease no defense, if the jury found want of repair at the beginning of the term, but that it was for the jury to say, on uncontradicted evidence, who was in possession on July 11, 1866.

5. And the judge then charged, that if on July 11, 1866, the pier were out ot repair, the plaintiff was entitled to a verdict, without any qualification in respect to who was in possession under the lease, or whether such want of repair had or had not arisen during the lease.

JOHN E. PARSONS, *for appellants.*

I. The only witness in reference to the lease was William Cruikshank, appellants' agent. This evidence was not controverted; it established the lease; that from the beginning of the term the lessors were out of possession, and that there was continuous possession under the lease during the term, by or under the lessees, who paid all the rent.

The lease had on it the pencil indorsement, signed by no one, the handwriting of which was not proved, "ejected November 16, 1866," four months after the accident. After the accident Mr. Cruikshank employed the dock builder to repair the lease, and compromised the claim against the lessees for the repairs, at fifty per cent. It was proved that there was no ejectment, even in November, and yet upon this evidence the judge left it to the jury to say who was in possession on July 11, 1866. It cannot be shown that the verdict did not proceed upon this point, it is unsustained by any evidence, and equally upon that ground as of the error in leaving the question to the jury should the verdict be set aside.

. II. The lease, with a full covenant by the lessees to keep,

the pier in repair, relieved the appellants (the lessors) from liability. It will not be contended that an absolute deed would not put at end all such liability. During the term the lease just as effectually put it out of the power of the lessors legally to enter to make repairs, and made the lessees owners *pro hoc vice.* The lessee controlled the use, and danger was due not to the fact, but to the use of the pier. If the lessee suffered the pier to be used, it was at his peril that he permitted it to be in dangerous want of repair. The lessors had no power to permit or refuse the use, and so could not be charged with any duty to those who did use it.

In *Rodway* agt. *Riggs* (37 N. Y., 256), the lessee was held liable, and in its opinion the court of appeals says, that by a covenant similar to that in this case, the city (the lessors) exercised due care on its part.

III. The appellants were none the less freed from liability if the pier were out of repair at the beginning of the term.

The judge held otherwise, on the authority of *Moody* agt. *The Mayor, &c.* (43 *Barb.*, 282). In that case the pier was so built that logs of wood projected under the surface of the water, hidden from sight in such manner that the plaintiff's vessel was caught upon them, and became a total loss; and the liability was put by this general term upon the defective construction of the pier, for which the owner is responsible, and the removal of which did not come within the lessees' covenant to keep in repair.

*Congreve* agt. *Smith*, and *Congreve* agt. *Morgan* (18 *N. Y.*, 79 and 84), were cases where one who himself made an excavation in a street, was made liable for failure to keep it properly protected.

In *Cannovan* agt. *Conklin* (1 *Abb.*, *N. S.*, 271), the common pleas general term assumed that the lessor is not liable but held the defendant, because he reserved a right of posession to himself in the part of the pier, the condition of which caused the injury.

IV. It was error for the judge to instruct the jury, as sub-

stantially he did, to assume that the condition of the pier was the same on May 1, 1865, as on July 11, 1866. Open and exposed to the elements as it was, there was no necessary impossibility that the pier should be in repair on May 1, 1865, and become out of repair during the fourteen months to July, 1866. However difficult to determine when it was, there was but an instant between the time when the pier was in repair and the time when it became otherwise; and what justified the learned judge, upon mere conjecture, to determine that that instant of time was not between the two dates?

V. It was certainly error for the judge to charge that it, the pier, fell from defective condition at the time, the appellants were, on that state of facts, alone responsible.

That was to hold that if the pier were well constructed, and in thorough repair at the beginning of the term, still the lessors remained liable; or, in other words, that under all circumstances must the liability of a pier owner continue.

VI. It is to be observed that the covenant in this case requires the lessee to keep the pier in order and repair. A pier is rented by a lessee to use as a pier, and a covenant on his part to keep it in good order and repair, requires that it shall be kept in suitable condition for such use, and effectually devolves upon him the duty to prevent use when the pier is in unsuitable condition.

VII. The judgment should be reversed.

IRA D. WARREN, *for respondents.*

I. The defendants' counsel requested the court to charge, " That there was no evidence of any want of repair at the execution of the lease."

This action was against the owners and not the lessees. The evidence showed that the timbers were rotten, and that it would take ten or fifteen years for them to rot in that situation; hence there was evidence to show that they were

rotten when the lease was made in 1865. The defendants leased a rotten pier, and received rent for its use, and hence are liable for all damages resulting therefrom.

They furnished the means for the infliction of the injury, and are liable as well as the tenant. (*Anderson* agt. *Dickie*, 1 *Robt.*, 245; *Vandenburgh* agt. *Truax*, 4 *Denio*, 464; *Thomas* agt. *Winchester*, 6 *N.Y.*, 397.)

If the injury resulted from the negligence of the owner, either in constructing or upholding the freehold, he is liable, and cannot, by letting, divest himself of such liability. (*Eakin* agt. *Brown*, 1 *E. D. Smith*, 43; *Goodley* agt. *Hagerty*, 20 *Penn.*, 389.)

" The entire surrender to a lessee does not relieve the owner from liability to third persons for defects which existed in it when he parted with its control. Nor yet would he be protected by a contract on the part of the hirer to repair such defects, for the mere relation of letter and hirer has no quality which enables the latter to evade responsibility for his own acts, by referring persons injured thereby to a third party for relief." (*Sherman & Redfield on Negligence*, § 502; *Moody* agt. *The Mayor, &c.*, 43 *Barb.*, 282; *Davenport* agt. *Buckman*, 37 *N. Y.*, 568; *Fish* agt. *Dodge*, 4 *Dennio*, 311; *Benson* agt. *Suarez*, 19 *Abb.*, 61.)

" The defendant constructed a sewer through his own property, which was not made with proper care; subsequently he leased the premises to the plaintiff, and afterwards the sewer burst. Held that the owner was liable." (*Alston* agt. *Grant*, 3 *El. & B.*, 128.)

The jury found that the timbers of this pier were rotten and dangerous at the time the lease was made, and were sustained by the evidence in so finding, as it would take from ten to fifteen years for them to rot, and had only been used one year.

Again, a pier in the city of New York is a public street.

If it is, the same doctrine applies that applies to any person using a part of the public street for his own purposes

he is bound to keep it safe. (*Congreve* agt. *Smith*, 18 *N. Y.*, 79 ; *Congreve* agt. *Morgan*, 18 *N. Y.*, 84 ; *Dygert* agt. *Schenek*, 23 *Wend.*, 446.)

II. The first exception to the charge is not well taken. The condition of the pier on the 1st of May, 1865, was a material point in view of the cases before cited. The evidence on that question was conflicting, and the court was correct in submitting it to the jury.

The second exception is not well taken. There was some evidence that notwithstanding the lease the defendants were actually in possession of the pier at the time. They repaired it after the damage. They were, at that time, negotiating to lease it to Johnson & Higgins. The lease contained a memorandum that the tenants were ejected in 1866, also that the lease was dated back.

The third exception to the charge has been discussed under the first point.

The fourth exception is not well taken. There was no evidence showing any change in the condition of the pier from the date of the lease to the time of the accident.

The last exception was not well taken, for the reason that the only witness who testified on the subject said that such timber would not decay, as this was in from ten to fifteen years.

III. It is not necessary to give evidence of any pecuniary loss in these cases to enable the next of kin to recover. (*Baron* agt. *R.R. Co.*, 5 *Wallace*, *U.S*, 90 ; *Oldfield* agt. *H. R. R. R. Co.*, 14 *N. Y.*, 310, 318 ; *McIntire* agt. *N. Y. C. R. R. Co.*, 37 *N. Y.*, 287.)

IV. We ask that this judgment be affirmed with costs.

*By the court*, LEONARD, J.—It must be conceded that if the pier, where the accident occurred, was in an unsafe condition at the time it was leased, May 1, 1865; that the possession of the pier by other parties, under a lease from the defendants, will not afford a defense against a claim upon them for injury arising from such defect.

The question of the condition of the pier at this time was submitted to the jury, and an exception thereto was taken by the defendants' counsel.

The accident occurred in July, 1866, and an examination afterwards proved that timbers, not previously in sight, were very much decayed.   There was an unusual weight of freight placed upon the pier, but the accident would not have happened had these timbers been sound.

There was no direct evidence as to. the condition of the timbers May 1, 1865, when the possession was delivered to the tenant, but it was assumed by the learned judge that it might be inferred from general knowledge of the length of time required for wood to become rotten.

It was said by the judge in substance that it could not occur in the time intervening between the making of the lease and the happening of the accident.   The only evidence bearing upon the subject was that it would require the lapse of fifteen years before such timbers would become so rotten.

I think it was impossible that the conclusion reached by the jury can be sustained by such evidence, and that the court erred in submitting the enquiry which he did.

The timbers might have been sufficiently sound when the lease was made, to have sustained the weight under which they broke, and precipitated the plaintiff's intestate into the water, inflicting the injury which caused his death in July, 1866.

At least, we can know nothing to the contrary as a fact.

There is no such general law of nature as will possess the court and jury of the proper knowledge to pass upon the soundness of the timbers, or their capacity to sustain the weight required, from the facts proven.

The judge erred in his instructions upon this subject.

The judge submitted to the jury the question whether the defendants were in the possession of the pier when the accident occurred.

Swords agt. Edgar.

The only evidence to support the submission of this inquiry was that the lease was executed some months after the date, and that the defendants' agent entered upon the pier and repaired it a few months after it broke down.

. It was also in evidence, and undisputed, that the lessees were in the possession at the date of the lease, and from thence until it fell. Also, that the defendants claimed the expense of these repairs from the lessees, which they compromised at fifty per cent., being liable, under a covenant, in the lease for repairing.

There is nothing inconsistent in these circumstances, upon which the plaintiffs rely to sustain the proposition, that the defendants were in possession, with the opposite conclusion.

The evidence is not sufficient to authorize the submission of the question.

The jury may have based their verdict upon an erroneous finding as to this fact of possession.

The judgment should be reversed and a new trial ordered, with costs to abide the event.